# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

WILLIAM EUGENE LANGLEY                                              PLAINTIFF

v.                      NO. 5:15-cv-00097 KGB/PSH

RAY HOBBS, WENDY KELLEY, LARRY NORRIS,                              DEFENDANTS
MICHAEL ELMORE, JACOB KING, and FLOYD MCHAN

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

FINDINGS AND RECOMMENDATION

INTRODUCTION. The defendants who remain in this case, Jacob King ("King") and Michael Elmore ("Elmore"), have filed the pending motion for summary judgment. See Document 53.[1] For the reasons that follow, the undersigned recommends that the motion be granted, the claims against them be dismissed with prejudice, the complaint be dismissed, and judgment be entered for all of the defendants.

PLEADINGS. Plaintiff William Eugene Langley ("Langley") began this case by filing a pro se complaint pursuant to 42 U.S.C. 1983 and joining, among others, King and Elmore in their individual capacities.[2] Langley alleged in the complaint that while he was incarcerated at the Arkansas Department of Correction's Ouachita River Unit ("Ouachita River Unit"), he was attacked by another inmate in the institution's dining facility. Langley alleges that the defendants violated his constitutional rights in two respects: first, they failed to protect him from the attack, and second, the attack only occurred because there was inadequate security in the dining facility.

---

[1] Elmore and King appear to have filed their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The rule provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[2] Langley joined a total of five defendants in their official and individual capacities; they were Ray Hobbs ("Hobbs"), Wendy Kelley ("Kelley"), Larry Norris ("Norris"), Elmore, King, and Floyd McHan ("McHan"). United States District Judge Kristine G. Baker subsequently dismissed all of the defendants in their official capacities and did so with prejudice. See Document 51. Judge Baker also dismissed Hobbs, Kelley, Norris, and McHan in their individual capacities but did so without prejudice. See Document 51. Judge Baker allowed Langley to proceed with his claims against King and Elmore in their individual capacities. See Document 51.

King and Elmore eventually filed the pending motion for summary judgment. In the motion, they maintained the following:

> It is undisputed that [King and Elmore] tried to help Langley after he had been threatened [by another inmate]. But he would not and could not provide them sufficient information to continue with their investigation and he declined protective custody. And two weeks later, he was attacked by a complete stranger for seemingly no reason at all. These facts do not present a substantial risk of harm or deliberate indifference. And the attack was a surprise. Therefore, Langley's failure to protect claim should be dismissed as a matter of law because [King and Elmore] are entitled to qualified immunity.

See Document 54 at CM/ECF 8.

Langley was notified of his right to file a response to King and Elmore's motion for summary judgment and was given fourteen days from January 18, 2017, to do so. He filed nothing in response to the motion, and the time for doing so has now passed.

FACTS. King and Elmore accompanied their motion for summary judgment with a statement of material facts as required by Local Rule 56.1(a). Langley filed nothing in response. Because he did not controvert the facts contained in the defendants' statement, the facts set forth in the statement are deemed admitted. See Local Rule 56.1(c). The defendants' statement, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute. Those facts are as follows:

1. Langley came to be incarcerated at the Ouachita River Unit sometime prior to August of 2013. See Document 55 at CM/ECF 1.

2. He was housed in a wing of the Ouachita River Unit that was maintained for older inmates and inmates who require medical care. See Document 55 at CM/ECF 1.

3. His time in custody appears to have been uneventful and largely without incident.

4. He had no gang affiliations, he had been in a fight once but it was in 2000, he had never been threatened, and he "kept mostly to himself and did leatherwork at the hobby craft." See Document 55 at CM/ECF 1.

5. In August of 2013, King was employed as a captain at the Ouachita River Unit; his responsibilities included conducting investigations, monitoring the dining facility, and answering inmate questions. See Document 55 at CM/ECF 1-2.

6. In August of 2013, Elmore was employed as a sergeant at the Ouachita River Unit; his responsibilities included running the security aspects of the facility. See Document 55 at CM/ECF 2-3.

7. King and Elmore were "familiar with" Langley and never knew him to be a problem inmate; King was not aware of any problems Langley might have had with other inmates. See Document 55 at CM/ECF 2-3.

8. At some point prior to August 27, 2013, Langley relayed a rumor to King and Elmore. See Document 55 at CM/ECF 2-3.

9. The rumor was that Langley was going to be attacked by another inmate. See Document 55 at CM/ECF 2-3.

10. Once King learned of the rumor, he questioned Langley as follows:

    A. King asked Langley who told him the rumor. Langley would not tell King. See Document 55 at CM/ECF 2.

    B. King asked Langley who had threatened to attack him. Langley did not know. See Document 55 at CM/ECF 2.

    C. When asked what should be done in response to the rumor, Langley said he only wanted to report the rumor. He wanted to ensure that if were attacked, he would not receive a disciplinary because he was about to become eligible for parole. See Document 55 at CM/ECF 2.

    D. King asked Langley if Langley had any problems with any other inmates. Langley said that he did not. See Document 55 at CM/ECF 2.

    E. King asked Langley if he felt comfortable returning to the barracks. Langley said that he did. See Document 55 at CM/ECF 2.

11. Langley never asked King for placement in protective custody. See Document 55 at CM/ECF 2.

12. King investigated the rumor "as much as he could by interviewing Langley," but King was unable to conduct a meaningful investigation because "Langley refused to divulge any information regarding the source of the rumor or the identity of the potential attacker." See Document 55 at CM/ECF 2.

13. Once Elmore learned of the rumor, he questioned Langley as follows:

    A. Elmore asked Langley who told him the rumor. Langley would not tell Elmore. See Document 55 at CM/ECF 3.

B. Elmore asked Langley who had threatened to attack him. Langley did not know. See Document 55 at CM/ECF 3.

C. Elmore asked Langley if he wanted to be placed in protective custody; Langley said that he did not want to be placed in protective custody because "he did not want to lose his hobby craft." See Document 55 at CM/ECF 3.[3]

14. Elmore reported the information to King, and Elmore took "all the steps he could with the information he was given." See Document 55 at CM/ECF 3.

15. On August 27, 2013, or approximately two weeks after Langley reported the rumor to King and Elmore, Langley was attacked by another inmate in the Ouachita River Unit's dining facility. See Document 55 at CM/ECF 3.

16. King and Elmore were not present when Langley was attacked. See Document 55 at CM/ECF 3.

17. Langley did not know his assailant, had never met him, and does not know why he attacked Langley. See Document 55 at CM/ECF 3.

18. It appears that Langley's assailant had never threatened anyone in the past; the attack on Langley appears to have been random. See Document 55 at CM/ECF 2.

19. After the attack, Langley received immediate medical attention. See Document 55 at CM/ECF 4.

---

[3] Inmates housed in protective custody do not have access to hobby craft. See Document 55 at CM/ECF 3.

ANALYSIS. Langley alleges that King and Elmore violated Langley's constitutional rights in two respects. Langley first maintains that the defendants failed to protect him from the attack.

An inmate has a constitutional right to be free from attacks by other inmates. See Robinson v. Cavanaugh, 20 F.3d 892 (8th Cir. 1994). A correctional officer is liable for failing to protect an inmate if the inmate can make the following two-part showing:

> A correctional official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). …

See Jones v. Wallace, 641 Fed.Appx. 665, 666 (8th Cir. 2016).

Applying the law to the facts of this claim, the undersigned finds that the claim warrants no relief. The undersigned so finds for two reasons. First, King and Elmore were not aware of any facts from which the inference could be drawn that there was a substantial risk of harm to Langley. King and Elmore were familiar with Langley and were not aware of any problems he might have had with other inmates. Once King and Elmore learned of the rumor regarding the alleged impending attack upon Langley, they attempted to investigate its veracity. Elmore even reported the rumor to King, his

superior. Their efforts to investigate the rumor were thwarted, though, by Langley and his inability or refusal to provide them with any information. He refused to identify the individual who shared the rumor and did not know the name of the individual who was allegedly going to carry out the attack. Langley did not mention having had any problems with other inmates. His only reason for reporting rumor was to ensure that if were attacked, he would not receive a disciplinary because he was about to become eligible for parole. In short, King and Elmore could not confirm the veracity of the rumor.

Second, assuming that King and Elmore were aware of facts from which the inference could be drawn that there was a substantial risk of harm to Langley, the defendants were not deliberately indifferent to the risk. Langley never asked King for placement in protective custody. Elmore specifically asked Langley if he wanted to be placed in protective custody, but Langley declined the offer. He reported that he felt comfortable returning to the barracks, and he was allowed to do so. The defendants could reasonably have taken, and not taken, the actions that they did.

Langley alleges that King and Elmore also violated Langley's constitutional rights in another respect. Langley maintains that the attack only occurred because there was inadequate security in the dining facility.

An inmate's conditions of confinement, "including the safety measures taken to protect [him], are subject to scrutiny under the Eighth Amendment." See Davis v. Oregon County, Missouri, 607 F.3d 543, 548 (8th Cir. 2010). The focus is upon whether the defendants acted with deliberate indifference. See Id. A correctional officer is

deliberately indifferent if he knows of, and disregards, a substantial risk to the inmate's safety. See Id. See also Brakeall v. Kaemingk, 2016 WL 4014600 (D.S.D. 2016) (duty under Eighth Amendment is to ensure reasonable safety, a standard incorporating regard for officers' task of keeping dangerous men in safe custody in humane conditions).

Applying the law to the facts of this claim, the undersigned finds that the claim warrants no relief. Langley has produced nothing to substantiate his allegation that the staffing in the dining facility was inadequate. For instance, he has failed to show the number of guards overseeing the dining facility at the time of the attack and why the security was insufficient. Clearly, Langley was attacked in the dining facility, but it does not follow that the security in the facility was inadequate. It appears that the attack was random and caught security personnel by surprise. In short, given Langley's failure to substantiate his claim, it cannot be said that King and Elmore acted with deliberate indifference in making staffing decisions.

RECOMMENDATION. There is no genuine dispute as to any material fact, and King and Elmore are entitled to judgment as a matter of law.[4] Their motion for summary judgment should therefore be granted, and Langley's claims against them in their individual capacities should be dismissed with prejudice. Langley's complaint should be dismissed, and judgment should be entered for all of the defendants.

---

[4] The undersigned has not specifically addressed King and Elmore's assertion of qualified immunity. The undersigned has not done so because Langley has failed to show that the facts, viewed in the light most favorable to him, demonstrate the deprivation of a constitutional or statutory right. See Saylor v. State of Nebraska, 812 F.3d 637 (8th Cir. 2016).

DATED this 6th day of April, 2017.

_____
UNITED STATES MAGISTRATE JUDGE